ANITA P. ARRIOLA, ESQ.
JOAQUIN C. ARRIOLA, JR., ESQ.
ARRIOLA, COWAN & ARRIOLA
259 MARTYR STREET, SUITE 201
HAGÅTÑA, GUAM 96910
Telephone: (671) 477-9731/33
Telecopier: (671) 477-9734

Counsel for Plaintiff
LOUIS VUITTON MALLETIER



FILED
DISTRICT COURT OF GUAM
JAN 0 6 2003
MARY L. M. MORAN
CLERK OF COURT

UNITED STATES DISTRICT COURT OF GUAM

LOUIS VUITTON MALLETIER,

     Plaintiff,

    vs.

JENNY DOE aka JENNY SALGADO,
and DOES I THROUGH XX.

     Defendants.

CIVIL CASE NO. 03-00001

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, SEIZURE ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, ORDER SEALING FILE AND ORDER ACCELERATING DISCOVERY**

ORIGINAL

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

# **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.     AN IMMEDIATE EX PARTE TEMPORARY RESTRAINING ORDER IS
       NECESSARY AND APPROPRIATE TO PREVENT IRREPARABLE
       HARM TO PLAINTIFF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.     A Temporary Restraining Order Should Be Issued Without Notice to
              Defendant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       B.     Plaintiff Has a Strong Likelihood of Success on the Merits. . . . . . . . . . . 6

       C.     An Adequate Remedy at Law is Unavailable. . . . . . . . . . . . . . . . . . . . 9

       D.     Unless Defendant is Enjoined Immediately, Plaintiffs
              Will be Irreparably Injured.    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       E.     The Balance of Equities Weighs in Favor of Plaintiff
              to Enjoin Defendant's Activities. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       F.     The Issuance of a Restraining Order is in the Public
              Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.    AN EX PARTE SEIZURE ORDER IS WARRANTED IN THIS CASE AND
       IS THE ONLY MEANS OF ADEQUATELY PROTECTING PLAINTIFF'S
       TRADEMARK RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.   THE FILE IN THIS ACTION SHOULD BE TEMPORARILY
       SEALED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.    DISCOVERY IN THIS MATTER SHOULD BE ACCELERATED. . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

i

# TABLE OF AUTHORITIES

## Cases

Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.,
   616 F.2d 440, 205 U.S.P.Q. 981 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Basicomputer Corp v. Scott,
   973 F.2d 507 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Chanel v. Baro's French Enterprise, et al.,
   CV89-0048 (D.Guam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 17

Communications Satellite Corporation v. Comcet, Inc.
   429 F.2d 1245 (4th Cir. 1970) cert. den. 400 U.S. 942 (1970) . . . . . . . . . . . . . . . . . . . 11

Corning Glass Works v. Jeannette Glass Co.,
   308 F.Supp. 1321 (S.D.N.Y. 1970), aff'd. 432 F.2d 784 (2d Cir. 1970) . . . . . . . . . . . . 12

Doran v. Salem Inn, Inc.,
   422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed. 2d 648 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ecolab, Inc. v. Paolo,
   753 F. Supp. 1100 (E.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A.
and Fila Sports, Inc. v. Bruce Kitchen, et al.,
   548 F.Supp. 248 (S.D. Fla. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Gucci America, Inc. v. Action Activewear, Inc.,
   759 F. Supp. 1060, 19 U.S.P.Q.2d 1448 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 9

Helene Curtis Industries, Inc. v. Church & Dwight Co.,
   560 F.2d 1325 (7th Cir. 1977) cert. denied 434 U.S. 1070 (1978) . . . . . . . . . . . . . . . . . 15

Hills Bros. Coffee, Inc. v. Hills Supermarkets, Inc.,
   428 F.2d 379 (2d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Honig v. Doe,
   484 U.S. 305, 108 S.Ct. 592, 98 L.Ed. 2d 686 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hunting World, Inc. v. City Hill Co. (Guam) Ltd., et al.,
   Civil Action No. CIV93-00053 (D.Guam) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 17, 18

ii

Hunting World, Inc. v. Jimar's Investment Co., et al.,
    Civil Action No. CIV92-00050 (D.Guam) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 14, 17, 18

In re Vuitton et Fils S.A.,
    606 F.2d 1 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Jockey Club, Inc. v. Jockey Club of Las Vegas,
    595 F.2d 1167 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Kraft General Foods, Inc. v. BC- USA, Inc.,
    840 F. Supp. 344, 29 U.S.P.Q.2d 1919 (E.D. Pa. 1993) . . . . . . . . . . . . . . . . . . . . . . 12

Louis Vuitton v. Jimar's Investment Co., et al.,
    CV89-00059 (D.Guam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 18

Louis Vuitton v. Marina Pizarro,
    CV89-00060 (D.Guam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 18

Louis Vuitton v. Ok Cha Sun, et al.,
    CV89-00061 (D.Guam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 18

McLeod v. Hosmer-Dorrance, Inc.,
    1976 U.S. Dist. LEXIS 12289, 192 U.S.P.Q. 683 (N.D. Cal. 1976) . . . . . . . . . . . . . . . 11

Metro Pub., Ltd. v. San Jose Mercury News,
    987 F.2d 637, 25 U.S.P.Q.2d 2049 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 10

Morales v. Trans World Airlines,
    504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed. 2d 157 (1992) . . . . . . . . . . . . . . . . . . . . . . . 7

Northeast Women's Ctr., Inc. v. McMonagle,
    665 F. Supp. 1147 (E.D. Pa. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Opticians Ass'n v. Independent Opticians,
    920 F.2d 187 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,
    782 F.2d 1508 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.,
    692 F.2d 1272 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

iii

Polo Fashions, Inc. v. Diebolt, Inc.,
    634 F. Supp. 786, 229 U.S.P.Q. 924 (D. Kan. 1986) ............................. 8

Pure Food Products, Inc. v. American Bakeries Co.,
    356 F. Supp. 701, 177 U.S.P.Q. 599 (N.D. Ill. 1973) ........................... 7

Reebok v. CHC, Inc., et al.,
    CV88-00030 (D.Guam) ......................................... 6, 14, 18

Regents of University of California v.
American Broadcasting Companies, Inc.,
    747 F.2d 511 (9th Cir. 1984) ...................................... 7

Roland Mach. Co. v. Dresser Indus., Inc.,
    749 F.2d 380 (7th Cir. 1984) ...................................... 7

Ross-Whitney Corporation v. Smith-Kline & French Laboratories,
    207 F.2d 190 (9th Cir. 1953), 99 U.S.P.Q. 1 ................................. 6

RWT Corp. v. Wonderware Corp.,
    931 F. Supp. 583 (N.D. Ill 1996) ................................... 11

Stahly, Inc. v. M.H. Jacobs Co.,
    183 F.2d 914 (7th Cir. 1950) cert. den. 340 U.S. 896 (1950) .................... 12

Vuitton et Fils S.A. v. Crown Handbags,
    492 F.Supp. 1071 (S.D.N.Y. 1979), aff'd. 622 F.2d 577 (2d Cir. 1980) ........ 8, 15, 16

Vuitton v. White,
    945 F.2d 569 (3d Cir. 1991) ...................................... 15, 16

**Statutes**

15 U.S.C. § 1115(b) ............................................. 7

15 U.S.C. § 1116 ................................... 5, 13, 14, 16, 17, 19

15 U.S.C. § 1118 ............................................. 5

15 U.S.C. § 1503 ............................................ 19

iv

5 G.C.A. § 32201 ........................................................... 13

**Miscellaneous**

Federal Rule of Civil Procedure 65(b) ............................................. 5

Federal Rules of Civil Procedure 30(a) ........................................... 19

Federal Rules of Civil Procedure 34(b) ........................................... 19

Local Rule 7.1 ............................................................... 6

Local Rule 7.1(j)(1) .......................................................... 6

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

v

## INTRODUCTION

This is an action for trademark infringement, trademark counterfeiting, false designation of origin and unfair competition against defendant Jenny Doe aka Jenny Salgado who is selling and distributing handbags and other goods falsely bearing the registered trademarks of plaintiffs Louis Vuitton Guam, Inc. ("Louis Vuitton"). The goods sold by defendant are inferior imitations and counterfeit copies of the high quality merchandise sold by plaintiff under their federally registered trade names and trademarks (hereinafter referred to as "the counterfeit goods"). Defendant has admitted selling "copies" of plaintiff's genuine merchandise. R. Resendez Decl.

Plaintiff's ex parte quest for a temporary restraining order, seizure order, order to show cause for preliminary injunction, order sealing file and for accelerated discovery is made to prevent irreparable harm to plaintiff while this action remains pending. Without ex parte try of these orders, plaintiff cannot halt the sale or disappearance of counterfeit goods or otherwise prevent the destruction of crucial evidence which would enable plaintiff to ascertain the manufacturers, suppliers, and distributors of the counterfeit goods beyond the named defendants. Unless such orders are issued ex parte, defendant will simply dispose of or hide the counterfeit goods and related business records and she will disclaim knowledge of the traffickers of the counterfeit goods. Consequently, the ex parte orders requested by plaintiff must be issued without delay.

## FACTUAL BACKGROUND

Plaintiff Louis Vuitton has been a master trunk maker in Paris since 1854. H. J. Kim Decl. It is a prestigious firm whose products have always been acknowledged as the "epitome of refinement." Id. The products of Louis Vuitton are renowned for their unique craftsmanship and the highest standards of quality. Id. They have been sold and distributed throughout the United

-1-

States and the world under one or more of Louis Vuitton's trademarks, including those attached to the Verified Complaint filed herein. Id. Louis Vuitton has been and now is producing, advertising, offering for sale and selling various merchandise bearing one or more of its trademarks, including trunks, luggage, travel accessories, handbags, small leather goods such as keycases, wallets, cigarette cases, belts, apparel, scarves, and various garments and other merchandise, in interstate commerce. Id. Using its trademarks, Louis Vuitton has established an outstanding reputation throughout the United States and the world as a supplier of high quality fashionable travel merchandise. Id.

The consistent high quality of Louis Vuitton's merchandise is known throughout the United States and the world. Plaintiff and its worldwide retail stores carefully monitor the manufacturing quality of their products and virtually all aspects of advertising, marketing and promotion of such products. As a result of plaintiff's substantial sales, advertising, and high quality standards, plaintiff's trademarks have acquired considerable value. The consuming public identifies plaintiffs as the source of products to which the marks are applied and that the products bearing their marks are of high quality and workmanship.

On January 3, 2003, Rosa L. Resendez, posing as a customer, met with defendant for the purpose of determining whether she was selling counterfeit goods marked with the Louis Vuitton names and trademarks. R. Resendez Decl.; Ms. Resendez purchased several counterfeit items from the defendant as follows:

1.  two identical wallets marked with the Louis Vuitton trademark for $30.00 USD each;

2.  a zipper-style wallet marked with the Louis Vuitton trademark for $40.00 USD;

3.  a billfold-styled wallet marked with the Louis Vuitton trademark for $40.00 USD;

-2-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

4.      a handbag with an "O" ring clutch marked with the Louis Vuitton trademark for $65.00 USD;

5.      a small handbag with a strap marked with the Louis Vuitton trademark for $60.00 USD;

6.      a handbag with a strap marked with the Louis Vuitton trademark for $45.00 USD;

7.      a backpack-style bag marked with the Louis Vuitton trademark for $75.00 USD;

8.      a large shoulderbag marked with the Louis Vuitton trademark for $15.00 USD.

R. Resendez Decl. and exhibits attached hereto. Defendant is not an authorized retailer or dealer of Louis Vuitton merchandise. H. J. Kim Decl. Ms. Resendez also observed several other counterfeit goods bearing the Louis Vuitton names or trademarks in the trunk of defendant's car. R. Resendez Decl.

This action has been instituted to remedy what is tantamount to the theft of a substantial portion of plaintiff's income, reputation and goodwill by the sale of unauthorized, counterfeit merchandise. Defendant is presently offering for sale, distributing and/or selling goods practically identical in appearance, though not in quality, to the products distributed by plaintiff. H. J. Kim Decl.; R. Resendez Decl. The goods sold by defendants bear trademarks identical to those used by plaintiffs on genuine Louis Vuitton merchandise.

Defendant's sale of counterfeit goods is without plaintiff's permission and without payment of royalties or licensing fees of any kind. Because defendant pays no royalties and offers goods of inferior quality, she undercuts the prices of legitimate vendors who abide by the law in the conduct of their business activities. More importantly, defendant's use of the identical labeling and trademarks of plaintiff allows defendant to trade upon and tarnish the valuable reputation of plaintiff

-3-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

in its name, marks and labeling. The consequent damage to plaintiff's names, reputations and goodwill is incalculable and plaintiffs is irreparably injured. H. J. Kim, Decl.

The sale of such counterfeit goods also causes significant confusion in the mind of the consuming public as to who produces and/or authorizes the sale of said merchandise. H. J. Kim Decl. Plaintiff has undoubtedly lost sales due to actual confusion on the part of customers who mistakenly believe that the counterfeit items sold by defendant are the genuine products of plaintiff. Furthermore, the counterfeit goods are not of the same high quality of the genuine products sold by plaintiff under its trademarks. Plaintiff legitimately fears not only a current loss of sales to defendant, but also a future loss of sales and reputation because customers have no way of knowing that defendant's inferior merchandise is not of plaintiff's making. Id.

## ARGUMENT

I. **AN IMMEDIATE EX PARTE TEMPORARY RESTRAINING ORDER IS NECESSARY AND APPROPRIATE TO PREVENT IRREPARABLE HARM TO PLAINTIFF.**

A. The Temporary Restraining Order Should Be Issued Without Notice to Defendant.

15 U.S.C. §1116 (the "Lanham Act") authorizes this Court to grant injunctions "… to prevent the violation of right" of the owner of a mark. 15 U.S.C. § 1116. Further, this Court is authorized to issue a restraining order ex parte to protect the rights of the trademark owner. 15 U.S.C. § 1118. Fed. R. Civ. P. 65(b) allows a temporary restraining order to be issued without notice if it appears from affidavits or the verified complaint that immediate or irreparable injury will result to the applicant before the adverse party can be heard in opposition and the applicant's attorney certifies to the court in writing the reasons supporting the claim that notice should not be required. L.R. 7.1

-4-

also provides that the Court may waive the notice requirement of L.R. 7.1(j)(1) if "the interests of justice" require that notice not be given. Plaintiff fulfills all of the requirements under each of the foregoing authorities. See Verified Complaint; H.J. Kim Decl., R. Resendez Decl.

It is well established in law in this circuit that a plaintiff may obtain a temporary restraining order and preliminary injunction against trademark infringement and unfair competition. Ross-Whitney Corporation v. Smith-Kline & French Laboratories, 207 F.2d 190 (9th Cir. 1953). It is also well established in this circuit that issuance of a temporary restraining order is an appropriate procedure to be followed in the case of irreparable injury from the use of a trademark. This Court has been particularly vigilant of the rights of trademark holders and has issued immediate ex parte temporary restraining orders to protect those rights. Louis Vuitton Malletier and Chanel, Inc. v. Suzie H.C. Yim, et al., Civil Case No. 00-00069 (D. Guam) (Order dated December 19, 2000); Hunting World, Inc. v. City Hill Co. (Guam) Ltd., et al., Civil Action No. CIV93-00053; Hunting World, Inc. v. Jimar's Investment Co., et al., Civil Action No. CIV92-00050. (D. Guam, Order dated August 17, 1992); Louis Vuitton v. Ok Cha Sun, et al., CV89-00061 (D.Guam) (Order dated October 27, 1989); Louis Vuitton v. Marina Pizarro, CV89-00060 (D.Guam) (Order dated October 27, 1989); Louis Vuitton v. Jimar's Investment Co., et al., CV89-00059 (D.Guam) (Order dated October 27, 1989); Chanel v. Baro's French Enterprise, et al., CV89-0048 (D.Guam) (Order dated August 30, 1989); Reebok v. CHC, Inc., et al., CV88-00030 (D.Guam) (Order dated June 17, 1988).

In order to obtain a temporary restraining order, plaintiff's must establish that: (1) it has a strong likelihood of success on the merits, Doran v. Salem Inn, Inc., 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed. 2d 648 (1975); (2) an adequate remedy at law is unavailable, Morales v. Trans World

-5-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Airlines, 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed. 2d 157 (1992); (3) plaintiff will suffer irreparable harm if the order is not granted, Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984); (4) the balance of hardships between plaintiff and defendant weighs in favor of plaintiff, Honig v. Doe, 484 U.S. 305, 328, 108 S.Ct. 592, 98 L.Ed. 2d 686 (1988); and (5) the public interest is served by the issuance of an injunction. Regents of University of California v. American Broadcasting Companies, Inc., 747 F.2d 511, 515 (9th Cir. 1984). Plaintiffs meet all of these criteria.

      B.     Plaintiff Has a Strong Likelihood of Success on the Merits.

There are two basic elements in a trademark infringement action. First, a plaintiff must prove the validity of the mark it seeks to protect. Jockey Club, Inc. v. Jockey Club of Las Vegas, 595 F.2d 1167, 1168 (9th Cir. 1979). Second, the plaintiff must prove that the use of a similar mark by the defendant is likely to cause confusion in the market place concerning the source of the differing products. Id.

Louis Vuitton's marks are registered in the U.S. Patent and Trademark Office. Exhibits A-H, attached to Verified Complaint. Plaintiff's registered trademarks are "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b) (emphasis added); see Pure Food Products, Inc. v. American Bakeries Co., 356 F. Supp. 701, 707, 177 U.S.P.Q. 599 (N.D. Ill. 1973) (plaintiffs' certificates of registration are prima facie evidence of ownership). Plaintiff has not authorized defendant's use of, or sale of items bearing their registered trademarks. H. J. Kim Decl. Plaintiff therefore satisfies the first element of a trademark infringement action.

-6-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Under the second element, plaintiff must prove that there is a likelihood of confusion as to the identity or association between plaintiff and defendant due to their common use of the trade name and trademark. Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc., 616 F.2d 440, 443, 205 U.S.P.Q. 981 (9th Cir. 1980).[1] In determining whether the likelihood of confusion exists, the Ninth Circuit has articulated a five-factor test: (1) the similarity of the marks; (2) evidence of actual confusion; (3) relationship between plaintiffs' and defendants' goods and channels of trade; (4) the strength of plaintiffs' marks; and (5) defendants' intent in adopting plaintiffs' marks. Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 782 F.2d 1508, 1509 (9th Cir. 1986).

Here, the marks on the goods sold by defendant are virtually indistinguishable from those found on the merchandise produced by Louis Vuitton. The items purchased by Ms. Resendez from defendant bear the words "Louis Vuitton" or the distinctive "LV" monogram. R. Resendez Decl.; H. J. Kim Decl. Polo Fashions, Inc. v. Diebolt, Inc., 634 F. Supp. 786, 795, 229 U.S.P.Q. 924 (D. Kan. 1986) (substantial likelihood of confusion was caused by similarity of embroidered polo logo and label mark on counterfeit shirts); Vuitton et Fils S.A. v. Crown Handbags, 492 F.Supp. 1071, 1076 (S.D.N.Y. 1979), aff'd. 622 F.2d 577 (2d Cir. 1980) (defendants' sale of products and trademarks exactly mimicking plaintiff's results in confusion and deception the Lanham Act was designed to prevent).

Next, use of the Louis Vuitton by defendant has already led to confusion and is persuasive proof that future confusion is likely. H. J. Kim Decl. Although the genuine Louis Vuitton

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

---

[1]    This is true for both federal counts alleged in plaintiffs' Verified Complaint under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a). New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 1202 (9th Cir. 1979) ("ultimate test is whether the public is likely to be confused or deceived by the similarity of the marks"). Actual confusion need not be shown to prevail in a Lanham Act trademark infringement suit; the likelihood of confusion is sufficient. Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875, 230 U.S.P.Q. 831 (2d Cir. 1986).

-7-

merchandise is of vastly superior quality to the counterfeit items purchased by Mr. Ishiyama, the items are similar enough in nature and appearance that the typical buyer will mistake the counterfeit goods for the genuine items. Further, plaintiff's products and defendant's counterfeit goods compete in the same consumer and geographic (Guam) market. Defendant marketed the counterfeit items with other counterfeit "brand name" merchandise, giving the appearance that they sold genuine "brand name" products. H. J. Kim Decl.

As discussed above, Louis Vuitton's marks are inherently distinctive and strong; under the trademark laws, they are afforded the widest gambit of protection from infringing uses. Finally, defendant's sale of the counterfeit items is not innocent or inadvertent. Defendant <u>admitted</u> that the items she sold are "copies" of the genuine products of Louis Vuitton. R. Resendez Decl. It is obvious that defendants intended to appropriate plaintiff's customers and to trade on plaintiff's goodwill.

Defendant's actions are plainly in violation of the Lanham Act. <u>Gucci America, Inc. v. Action Activewear, Inc.</u>, 759 F. Supp. 1060, 1063, 19 U.S.P.Q.2d 1448 (S.D.N.Y. 1991) (operators of retail clothing shops, by offering for sale counterfeit Gucci and Polo sportswear, were guilty of trademark infringement and unfair competition). Based upon the overwhelming evidence, defendant's admissions that she knew she was selling counterfeit goods, the incontestability of plaintiff's registered trademarks, and the high probability of confusion, plaintiff's have established a strong likelihood of success on the merits of its trademark infringement and unfair competition claims against defendants. <u>Metro Pub., Ltd. v. San Jose Mercury News,</u> 987 F.2d 637, 640, 25 U.S.P.Q.2d 2049 (9th Cir. 1993) (once plaintiff has demonstrated likelihood of confusion, irreparable harm is presumed); <u>In re Vuitton et Fils S.A.,</u> 606 F.2d 1, 4 (2d Cir. 1979) (ordering the

-8-

district court to enter an ex parte temporary restraining order due to the likelihood of product confusion).

### C. An Adequate Remedy at Law is Unavailable.

A legal remedy is inadequate if the plaintiff's injury is a continuing one, where the last available remedy at law would relegate the plaintiff to filing a separate claim for damages each time it is injured anew. Northeast Women's Ctr., Inc. v. McMonagle, 665 F. Supp. 1147, 1153 (E.D. Pa. 1987). Unless a restraining order is granted, plaintiff's here would be required to file separate claims for damages each time the defendant sold counterfeit goods bearing the trade names or trademarks of Louis Vuitton. Because plaintiff would receive legal relief only through a multiplicity of lawsuits, a restraining order is warranted. Ecolab, Inc. v. Paolo, 753 F. Supp. 1100, 1110 (E.D.N.Y. 1991). Further, a loss of customer goodwill, which is suffered by plaintiff in this case, constitutes immeasurable damage, thereby rendering alternative remedies at law unavailable. Basicomputer Corp v. Scott, 973 F.2d 507, 512 (6th Cir. 1992).

### D. Unless Defendant is Enjoined Immediately, Plaintiff Will be Irreparably Injured.

Plaintiff is irreparably harmed by defendants' actions in several ways. First, the damage caused by confusion to the public is incapable of precise financial measurement given the intangible nature of plaintiffs' goodwill. Communications Satellite Corporation v. Comcet, Inc., 429 F.2d 1245, 1253 (4th Cir. 1970) cert. den. 400 U.S. 942 (1970).

Second, a trade name or trademark is a badge. It represents to the world the identity of the source or origin of the goods that bear it. Plaintiff's reputation rests with its trademarks. When defendant uses the trademarks of plaintiff, customers associate defendant's goods with plaintiffs. If

-9-

defendant continues to use plaintiff's trademarks, defendant will trade upon and tarnish plaintiff's inestimable and well-earned reputation. Where reputation is at stake, irreparable injury for the issuance of a preliminary injunction is presumed. Hills Bros. Coffee, Inc. v. Hills Supermarkets, Inc., 428 F.2d 379, 381 (2d Cir. 1970); RWT Corp. v. Wonderware Corp., 931 F. Supp. 583, 591 (N.D. Ill 1996) (irreparable harm usually presumed in trademark infringement cases).

Third, customers have bought and will continue to buy defendant's goods, believing that they are connected to or associated with plaintiffs. Plaintiff therefor incurs an enormous loss of revenue which is difficult to ascertain. Given the illicit nature of counterfeiting, it is unlikely that accurate records exist to establish the actual dollar amount lost by plaintiff. In McLeod v. Hosmer-Dorrance, Inc., 1976 U.S. Dist. LEXIS 12289, 192 U.S.P.Q. 683, 686 (N.D. Cal. 1976), for example, the court noted that a defendant's use of the plaintiff's trademark "supports a finding of irreparable injury in the sense that it may not be fully compensable in damages."

Finally, by depriving plaintiff of the ability to control the nature and quality of defendant's goods, defendant inflicts serious harm upon plaintiff. This deprivation, without more, constitutes irreparable injury. Kraft General Foods, Inc. v. BC- USA, Inc., 840 F. Supp. 344, 351, 29 U.S.P.Q.2d 1919 (E.D. Pa. 1993) ( trademark owner's lack of control over trade reputation constitutes irreparable injury supporting injunction).

     E.     The Balance of Equities Weighs in Favor of Plaintiff to Enjoin Defendants' Activities.

Plaintiff's goodwill, reputation, loss of trade and control over its products are irreparably injured by defendant's sale and distribution of counterfeit goods bearing trademarks identical to those of the plaintiffs. In addition, the consuming public suffers irreparable injury as a result of the

-10-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

immediate restraining order to issue to protect consumers from being defrauded by the defendants' sale of counterfeit goods.

In sum, all of the requirements for issuance of a restraining order are met here, and an order should therefore issue immediately.

## II. AN EX PARTE SEIZURE ORDER IS WARRANTED IN THIS CASE AND IS THE ONLY MEANS OF ADEQUATELY PROTECTING PLAINTIFFS' TRADEMARK RIGHTS.

Plaintiff requests that the court issue a seizure order against defendant without notice, permitting the United States Marshal, or other peace officer, to seize the counterfeit Louis Vuitton merchandise and related business records in the possession, custody and control of defendant in order to preserve the evidence of defendant's illegal activities. 15 U.S.C. § 1116(d) authorizes this Court to issue such an ex parte order. This Court has previously issued ex parte seizure orders in other trademark infringement actions, recognizing that in the absence of ex parte relief, counterfeiters could destroy, transfer or conceal their counterfeit goods and any records documenting their unlawful activities. Reebok v. CHC, Inc., et al., CV88-00030 (D.Guam) (Order dated June 17, 1988); Chanel v. Baro's French Enterprise, et al., CV89-0048 (D.Guam) (Order dated August 30, 1989); Louis Vuitton v. Jimar's Investment Co., et al., CV89-00059 (D.Guam) (Order dated October 27, 1989) ; Louis Vuitton v. Marina Pizarro, CV89-00060 (D.Guam) (Order dated October 27, 1989); Louis Vuitton v. Ok Cha Sun, et al., CV89-00061 (D.Guam) (Order dated October 27, 1989); Hunting World, Inc. v. City Hill Co. (Guam) Ltd., et al., Civil Action No. CIV93-00053; Hunting World, Inc. v. Jimar's Investment Co., et al., Civil Action No. CIV92-00050; Louis Vuitton, et al. v. Suzie H.C. Yim, et al., Civil Action No. 00-00069 (Order dated December 19, 2000).

-12-

15 U.S.C. § 1116(d)(4)(B)(i) - (vii), as amended, imposes certain conditions to be met prior to issuance of an ex parte seizure order. The Court must find that: an order other than an ex parte seizure order is inadequate to achieve the purposes of the Lanham Trade-Mark Act; plaintiff has not publicized the requested seizure; plaintiff is likely to succeed in showing that the defendant used counterfeit marks in connection with the sale of goods; immediate and irreparable injury will occur if such seizure is not ordered; the matter to be seized will be located at the place identified in the application; and the defendant would destroy, move, or hide the goods if plaintiff provided notice to them.

All of those requirements are met here. An order other than an ex parte seizure order would be inadequate here. Providing notice to defendant of the request for injunctive relief and seizure order would effectively deny plaintiff of any meaningful remedy. A restraining order, by itself, will not prevent the sale or movement of the counterfeit goods, since the defendant may have ready access to other locations or other sellers to which she can transfer the goods, or she can simply destroy or conceal the goods. Lured by the prospect of substantial cash profits, counterfeiters have shown little, if any, respect for court orders. See, e.g., Vuitton v. White, 945 F.2d 569, 575 (3d Cir. 1991) (counterfeit merchandise sold despite an outstanding permanent injunction against some of the defendants). If the defendant violates the restraining order, the disappearance of counterfeit goods leaves this Court and plaintiff without an effective remedy to identify the violators or prove their violation.

Plaintiff has not publicized the requested seizure. Plaintiff has provided overwhelming evidence that defendant has not only used, but has admitted sale of, counterfeit Louis Vuitton marks in their sale of infringing goods.

-13-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Immediate and irreparable injury will occur if the seizure is not ordered. Potential damage to reputation and likelihood of confusion constitute irreparable injury. <u>Opticians Ass'n v. Independent Opticians,</u> 920 F.2d 187, 195-96 (3d Cir. 1990). In addition, the distribution of infringing merchandise constitutes irreparable injury. <u>In re Vuitton et Fils S.A.,</u> <u>supra.,</u> 606 F.2d at 4; <u>Helene Curtis Industries. Inc. v. Church & Dwight Co.,</u> 560 F.2d 1325, 1332-33 (7th Cir. 1977) <u>cert. denied</u> 434 U.S. 1070 (1978). Once defendant has the opportunity to "unload" their counterfeit goods or dispose of their records, it will be virtually impossible to determine the identity of defendant's suppliers, customers, or the extent of their unlawful activities. Moreover, as the declarations of Ms. Resendez demonstrates, the defendant here has numerous items in the trunk of her car displaying counterfeit Louis Vuitton marks. The counterfeit goods are the best evidence of defendant's violation of the trademark infringement laws and must be preserved in order to prosecute this action.

Plaintiff has provided the exact locations of the house and vehicle where the counterfeit goods and business records will be seized. R. Resendez Decl.

As established in Part IE, above, the harm to plaintiff in denying their application for an ex parte seizure order far outweighs the harm to the defendant. Moreover, any legitimate interests of the defendant are protected by the statute's requirements that plaintiff shall post adequate security for the seized goods, 15 U.S.C. § 1116(5)(D); that defendant shall be protected from any publicity regarding the seizure, 15 U.S.C. § 1116(6); that a protective order may issue regarding confidential information contained in the seized records, 15 U.S.C. § 1116(7); that the seizure order shall be sealed until defendant has the opportunity to contest the order, 15 U.S.C. § 1116(8); that an

-14-

October 27, 1989); <u>Louis Vuitton v. Jimar's Investment Co., et al.</u>, CV89-00059 (D.Guam) (Order dated October 27, 1989). Plaintiff requests accelerated discovery allowing the immediate inspection and copying of the records of the sale or purchase of the counterfeit goods by the defendant. This will be facilitated by the execution of the seizure order initially. However, plaintiff also seeks the use of traditional methods of discovery on shortened time. This will enable plaintiff to learn the information it is entitled to in this action before the records can be moved or destroyed.

Specifically, plaintiff seeks accelerated discovery to learn the identity of defendant's suppliers, dealers, transferors, sellers and customers of counterfeit Louis Vuitton merchandise. If discovery and inspection of records are not commenced immediately, defendant's business records will likely "disappear" and defendant's recollections of the identities of their suppliers and customers will fade entirely.

15 U.S.C. §§ 1503(l) and 1116(d)(1)(A) allow for seizure of records documenting the manufacture, sale or receipt of items relating to defendant's trafficking in counterfeit goods. Further, an appropriate protective order may be issued, as stated in the proposed order accompanying this request, limiting early access to the records. Federal Rules of Civil Procedure 30(a) and 34(b) provide that plaintiff may obtain leave of court to take early depositions and to require early document production.

Records relating to the purchase and sale of the counterfeit goods will enable plaintiffs to compute their statutory damages and to take appropriate legal action against the other traffickers acting in concert with defendants. Plaintiff therefore requests that it be permitted to inspect and copy the defendant's records regarding goods bearing the Louis Vuitton marks in order to preserve the

-17-

evidence and avoid the destruction of records. Plaintiff also requests that it be allowed to take the

depositions of defendant and to inspect documents on shortened time.

## CONCLUSION

For all of the foregoing reasons, plaintiff Louis Vuitton respectfully requests that the Court

grant an ex parte order to show cause why the court should not issue a preliminary injunction

restraining the defendant and others acting in concert or participation with her, from continuing to

infringe the registered trademarks of Louis Vuitton; an ex parte order temporarily restraining and

enjoining defendants, and others acting in concert or participation with her, from committing further

acts of infringement and from disposing in any manner any goods bearing plaintiff's registered

trademarks which are in their possession, custody or control; an ex parte seizure order directing the

United States Marshal or peace officers, to seize and impound defendant's counterfeit Louis Vuitton

merchandise and related business documents; an ex parte order that the documents, pleadings and

other papers in this case be filed under seal; and an ex parte order granting them leave to take

accelerated discovery.

Dated this 6th day of January, 2003.

ARRIOLA, COWAN & ARRIOLA
Counsel for Plaintiff LOUIS VUITTON
MALLETIER


BY: _____
ANITA P. ARRIOLA

-18-